STATE OF NEBRASKA, APPELLEE, v. RUSSELL R. JUDD, APPELLANT.

263 N. W. 2d 487

Filed March 15, 1978. No. 41628.

Stanley C. Goodwin of Cunningham Law Offices, for appellant.

Paul L. Douglas, Attorney General, and Patrick T. O'Brien, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, BRODKEY, and WHITE, JJ., and KUNS, Retired District Judge.

SPENCER, J.

Defendant appeals his conviction for assault with

intent to inflict great bodily injury. § 28-413, R. R. S. 1943. His sole assignment of error is the insufficiency of the evidence to sustain the verdict.

At the time of the offense defendant, Russell R. Judd, was 17 years of age. With three teen-aged companions, he went to the McCook Junior High School over the noon hour on December 17, 1976. Upon arrival at the school, defendant saw the complaining witness, Tim Redden, who was 15 years of age, standing along the north side of the school building with two friends, Galen Fisher and Glen Linder. Defendant approached Redden and asked him why he had called defendant a name the day before. Redden denied he had called him a name. At this time Redden was sitting on a wall which guarded the entrance to the cafeteria about 12 feet below. Defendant asked Redden if he wanted to get thrown over the wall he was sitting on, and Redden told him: "I wanted to live a few more years." Judd then got on the wall and told Redden: "If I wanted to do anything to you he (sic) would push me over the wall." Defendant grabbed Redden by his clothing and acted as if he was going to throw him over the wall, but he did not push him in any direction.

About 5 minutes later defendant pulled a knife from somewhere on his person and placed it to Redden's throat. Redden described the knife as having a blade about 5 or 6 inches long and a quarter of an inch wide. Judd held the knife at his throat but did not cut him with it. The following is Redden's testimony as to what transpired during the time the knife was held to his throat: "He said, 'Where is the kid with the gold coat', and I says 'I don't know'. And I said, 'He might be down on the island'. And he says, 'I want a better answer than that'. And so I told him — no, he said, 'Is he the one that called me a name?'. And I said, 'Yeah'. And he said, 'I want a better answer than that', and I said, 'Yeah, he

was'." After defendant held the knife at Redden's throat, he asked him, "How would you like your jaw broke?"

Galen Fisher, who was also 15 years old and who was a cousin of the defendant, testified he saw Judd grab Redden by the shirt and heard him tell Redden he was going to push him off the wall. He also testified defendant put a knife to Redden's throat. He described the knife as being from 4 to 6 inches in total length, with a blade about 1 inch wide. While Redden testified the knife was held to his throat for only a few seconds, Fisher testified it was there for more than 5 minutes. Fisher was asked if he thought Judd would use the knife, and he said he wasn't sure. He did not see where the defendant got the knife or where he put it away. Judd searched him and took a lighter out of his pocket. He gave it to one of his companions, who stomped on it.

Glen Linder, who was 16 years old, testified he was present when defendant asked Redden if he had called him a name. He also heard defendant state he could break three people's jaws and leave one out. He assumed defendant was referring to Redden and the two boys who were with him the previous day. He left because he was scared. As he walked away, he saw Judd and one of his companions have Fisher against the wall. He saw Judd reach into Fisher's pocket, take out a lighter, and give it to his companion. He then saw the companion try to light it and throw it against the wall and smash it. He did not observe the other incidents testified to by the other boys. He thought there was going to be trouble and didn't want to get involved.

Judd took the stand. He testified he asked Redden who had called him names the day before. He admitted telling Redden, "He would like to break his jaw." He also told Redden he "would like to throw him over the wall." He denied touching Redden and also denied having a knife with him on the day in

question.  Defendant's three companions were called to testify, and they also stated they had been present during the entire time and had not observed defendant with a knife.

The issue involved herein is whether there was sufficient proof of the required intent.  The matter was tried to a jury which returned a verdict of guilty.  The court sentenced defendant to the Youth Development Center at Kearney, Nebraska, for an indefinite period.

Specific intent is an essential element in the crime of assault with intent to inflict great bodily injury, and proof thereof is indispensable to sustain a conviction.  Because the intent with which an act is done exists only in the mind of the actor, its proof must be inferred from the act itself and from the facts surrounding the act.

Defendant admits he told Redden he would like to break his jaw and that he should throw him over the wall.  While the defendant denies he had a knife in his hand at any time during these events, there is sufficient evidence from which the jury could find he did.

It is a frightening experience for a 15-year-old to have a knife held to his throat.  There can be little doubt that an assault did occur.  The question is whether or not there was an intention to cause great bodily harm.  This was a question for the jury on the evidence produced.  We have no doubt the jury could readily find an intent to inflict great bodily injury from the threat to break Redden's jaw, from the threat to throw him over a 12-foot wall onto a concrete driveway, and holding a knife to his throat.

Even though defendant's counsel argues the mere displaying of a knife with no further act than to stick it under one's chin in the vicinity of the neck is no more than a childish prank, the jury could readily find otherwise.  Holding a knife to one's throat is not a childish prank.  It is a serious matter.  A knife is

a dangerous weapon capable of inflicting a serious, if not a fatal, injury. A false movement on the part of either party could result in a very serious injury.

The trial court gave the following instruction on intent: "The intent required by Instruction No. 4 is a material element of the crime charged against the defendant. Intent is a mental process and it therefore generally remains hidden within the mind where it is conceived. It is rarely if ever susceptible of proof by direct evidence. It may, however, be inferred from the words and acts of the defendant and from the facts and circumstances surrounding his conduct. But before that intent can be inferred from such circumstantial evidence alone, it must be of such character as to exclude every reasonable conclusion except that defendant had the required intent. It is for you to determine from all the facts and circumstances in evidence whether or not the defendant committed the acts complained of and whether at such time he had the criminal intent required by Instruction No. 4. If you have any reasonable doubt with respect to either, you must find the defendant not guilty."

The evidence was sufficient to submit the issue to the jury. The instructions of the court adequately presented defendant's defense and fully protected his rights. The jury decided adversely to the defendant. The judgment must be affirmed.

Judgment affirmed.

AFFIRMED.